ORIGINAL

**Stephen F. English**, OSB #73084
steve.english@bullivant.com
**John Kaempf**, OSB #92539
john.kaempf@bullivant.com
BULLIVANT HOUSER BAILEY, P.C.
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

Of Attorneys for Plaintiff Tim Grgurich

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| TIM GRGURICH,<br><br>  Plaintiff,<br><br>v.<br><br>TRAIL BLAZERS INC., an Oregon corporation,<br><br>  Defendant. | '05 516 HA<br>Civil No:<br><br>**COMPLAINT (BREACH OF CONTRACT; DECLARATORY JUDGMENT; TEMPORARY RESTRAINING ORDER; PRELIMINARY INJUNCTION)**<br>(Expedited Hearing Requested) |

Plaintiff Tim Grgurich hereby alleges as follows:

1. Plaintiff is a resident of Nevada. Defendant is an Oregon corporation with its principal place of business in Portland, Oregon.

2. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

3. This Court has jurisdiction of this action pursuant to 28 USC §§ 1331-1332.

/ / /

/ / /

/ / /

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

COMPLAINT
Page 1


dockets.Justia.com

# FIRST CLAIM FOR RELIEF

(Breach of Contract)

4. Plaintiff realleges paragraphs 1-3 above. Plaintiff also incorporates by reference his contemporaneously filed Declaration and Exhibit A thereto.

5. In July 2004, plaintiff entered into a contract with defendant ("the contract") to serve as an assistant basketball coach for the Portland Trail Blazers professional basketball team ("the Blazers") through July 14, 2006. A true copy of the contract is attached as Exhibit A to plaintiff's contemporaneously filed Declaration and is incorporated herein by reference.

6. Nate McMillan was hired as the head coach of the Blazers on or about July 7, 2005.

7. Plaintiff reported to the Blazers' summer camp in Las Vegas on or about July 9, 2005. Mr. McMillan arrived in Las Vegas on or about July 10, 2005. Mr. McMillan never assigned plaintiff any duties at the summer camp, never stated that plaintiff needed to be at practice at the gym, and did not state that he needed plaintiff to assist him in any way.

8. Mr. McMillan did not meet with plaintiff until on or about July 13, 2005, at which time he told plaintiff that he did not want plaintiff to be one of his assistant coaches for the Blazers. Mr. McMillan was an authorized agent and employee of defendant acting within the scope of his agency and employment at the time of this statement.

9 On July 14, 2005, defendant sent plaintiff a letter stating that plaintiff was suspended without pay effective July 15, 2005 due to not assisting with the Blazers' summer league program. Plaintiff has not received any pay from defendant since July 14, 2005.

10. Plaintiff did not fully assist with the 2005 summer league program because of the statements and conduct by Mr. McMillan alleged above.

11. In August 2005, Mr. McMillan again told plaintiff that he did not want plaintiff to work for him as one of defendant's assistant coaches. Mr. McMillan has also told

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

COMPLAINT
Page 2

plaintiff that he will not hire plaintiff as one of his assistant coaches with the Blazers. Mr. McMillan was an authorized agent and employee of defendant acting within the scope of his agency and employment at the time of these statements.

12. The National Basketball Association ("NBA") only allows three assistant coaches to sit on the bench alongside the head coach and the players during games. During the 2004-2005 season, plaintiff served as one of the Blazers' three assistant coaches on the bench during games. One of the duties normally associated with plaintiff's assistant coach position with defendant during the 2004-2005 NBA season was to serve as a bench coach. This involved coaching players during games and consulting with the head coach during games.

13. Defendant's management and Mr. McMillan informed plaintiff that he will not serve as an assistant bench coach for the Blazers during the upcoming 2005-2006 season.

14. Defendant claims that plaintiff is still under contract with it until the contract expires on July 14, 2006. Defendant will not allow plaintiff to seek or obtain employment with another NBA team.

15. Plaintiff has performed all conditions precedent required of plaintiff under the contract.

16. Through simultaneously telling plaintiff that he is still under contract with defendant, but wrongfully suspending plaintiff without pay and refusing to allow plaintiff to seek or obtain employment with another NBA team, as well as improperly changing plaintiff's job duties, defendant breached the contract.

17. Pursuant to the terms of the contract, defendant currently owes plaintiff $114,583.33 in back pay, with interest thereon at the statutory rate of 9% per annum. This damage amount will increase with each semi-monthly pay period pursuant to the terms of the contract.

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

COMPLAINT
Page 3

## SECOND CLAIM FOR RELIEF

(Declaratory Judgment)

18. Plaintiff realleges paragraphs 1-14 above.

19. It is the custom and practice in the NBA that when a team fires a head coach, his assistant coaches are allowed to leave their positions with the team and pursue other employment. Plaintiff informed defendant that he desired to leave his position with defendant immediately after head coach Maurice Cheeks was fired by defendant in early March 2005.

20. In early March 2005, after Mr. Cheeks was fired as head coach of the Blazers, defendant's management asked plaintiff to stay in his position with the Blazers until the 2004-2005 NBA regular season was completed, and told plaintiff that if he did, they would strongly recommend that the Blazers' owner, Paul Allen, release plaintiff from the remaining year of the contract. Such recommendations by management are routinely followed. Based on these statements by defendant's management, plaintiff remained with the Blazers through the completion of the 2004-2005 NBA regular season. Plaintiff later cleaned out his desk and office at defendant's facility based on these statements by defendant's management.

21. In June 2005, Nate McMillan, who was then still the head coach of the Seattle Supersonics ("the Sonics"), called plaintiff to discuss his possible decision to become the head coach of the Blazers. At that time, Mr. McMillan told plaintiff that defendant's management suggested that he contact plaintiff to discuss various players on the Blazers, as well as what plaintiff thought of the team, so he could use that information to decide whether to accept defendant's offer to become the Blazers' head coach.

22. Mr. McMillan's statements to plaintiff noted in paragraph 21 above confirmed that plaintiff was no longer an employee of defendant because if plaintiff had been an employee of defendant at that time, it would have violated the NBA's anti-tampering rules for defendant's management to direct Mr. McMillan to contact plaintiff about the Blazers'

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

COMPLAINT
Page 4

head coaching position when Mr. McMillan was still under contract with the Sonics and plaintiff was still under contract with defendant.

23. By the time of Mr. McMillan's statement to plaintiff on or about July 13, 2005 that that he did not want plaintiff to be one of his assistant coaches for the Blazers, Mr. McMillan and defendant had formally filled all of the assistant bench coach positions, and all other assistant coach positions, except for one. Mr. McMillan and defendant had hired Dean Demopoulos, Maurice Lucas, and Monty Williams as assistant coaches by that time. Plaintiff was aware at that time that the remaining assistant coach position had been offered to Bob Burke and he had accepted, but defendant did not formally bring him on staff yet in order to make it appear as if there was a position still open for plaintiff, when, in fact, there was not. This allowed defendant to claim that plaintiff refused to work for it when, in fact, defendant had no position open for plaintiff.

24. In early September 2005, defendant publicly announced the hiring of Mr. Burke as an assistant coach of the Blazers.

25. Plaintiff desires and financially needs to immediately obtain employment as an assistant bench coach with another NBA team. Training camps for NBA teams begin next week (the first week of October 2005). Plaintiff will suffer irreparable financial and professional harm if he is not allowed to sign a new contract with another NBA team in the next few days because any team plaintiff considers will likely hire another assistant coach before the start of training camp next week if plaintiff is unable to sign a contract in the next few days.

26. Other NBA teams are interested in hiring plaintiff as an assistant bench coach but are afraid of tampering charges by defendant, who will not let plaintiff out of the contract, but yet has no duties for plaintiff, will not pay plaintiff, and has a head coach who told plaintiff he will not work with him. Defendant will not allow other NBA teams to communicate with plaintiff about working for them. Defendant has tried to obtain

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

COMPLAINT
Page 5

concessions from other NBA teams, including a draft pick, to allow plaintiff to sign with another NBA team. If defendant ceased its improper threats and demands concerning plaintiff, plaintiff would be able to immediately seek and obtain employment with another NBA team. Plaintiff has no adequate remedy at law.

27. Pursuant to 28 USC § 2201 and the inherent power of the Court, plaintiff requests a declaratory judgment that (a) defendant is in breach of the contract; (b) plaintiff is no longer bound by the contract; (c) plaintiff is allowed to immediately seek and obtain employment by another NBA team; and (d) defendant shall not in any way interfere with plaintiff's efforts to seek and obtain employment by another NBA team, including not threatening any NBA team with tampering charges relating to plaintiff, and not requiring or accepting any compensation from any such NBA team in return for plaintiff signing a contract with that team.

### THIRD CLAIM FOR RELIEF

(Temporary Restraining Order and Preliminary Injunction)

28. Plaintiff realleges paragraphs 1-14 and 18-27 above.

29. Plaintiff has demonstrated that he will probably prevail on the merits of his claims for breach of contract and a declaratory judgment, and will suffer irreparable financial and professional harm if he is not allowed to immediately seek and obtain employment with another NBA team for the 2005-2006 season.

30. The hardship to plaintiff in being prevented from timely obtaining employment with another NBA team for the 2005-2006 season outweighs any alleged hardship to defendant in continuing to suspend plaintiff without pay, while at the same time no longer allowing plaintiff to continue as an assistant bench coach with the Blazers. Defendant has already hired a full set of assistant coaches to work with Mr. McMillan, its new head coach, who has stated that he will not work with plaintiff.

31. Plaintiff has no adequate remedy at law.

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

COMPLAINT
Page 6

32. Pursuant to Fed. R. Civ. P. 65 and the inherent power of the Court, plaintiff requests that the Court issue a temporary restraining order ("TRO") and a preliminary injunction providing that (a) plaintiff is allowed to immediately seek and obtain employment with another NBA team; and (b) defendant shall not in any way interfere with plaintiff's efforts to seek and obtain employment by another NBA team, including not threatening any NBA team with tampering charges relating to plaintiff, and not requiring or accepting any compensation from any such NBA team in return for plaintiff signing a contract with that team.

## RELIEF REQUESTED

Wherefore, plaintiff prays for the following relief:

1. Awarding plaintiff $114,583.33 in back pay, with interest thereon at the statutory rate of 9% per annum, plus additional damages with each pay-period pursuant to the terms of the contract;

2. The declaratory judgment requested above;

3. The TRO and preliminary injunction requested above; and

4. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED this 29th day of September, 2005.

BULLIVANT HOUSER BAILEY PC

BY _____
Stephen F. English, OSB #73084
John Kaempf, OSB #92539
Telephone: 503.228.6351

Attorneys for Plaintiff Tim Grgurich

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

COMPLAINT
Page 7

# CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2005, I served a true copy of the foregoing **COMPLAINT (BREACH OF CONTRACT; DECLARATORY JUDGMENT; TEMPORARY RESTRAINING ORDER; PRELIMINARY INJUNCTION)** on the attorney for defendant by facsimile.

>Michael V. Fennell
>Vice President/General Counsel
>Portland Trail Blazers
>One Center Court, Suite 200
>Portland, OR 97227
>
>   Attorney for Defendant

_____
Stephen F. English
John Kaempf

Of Attorneys for Plaintiff Tim Grgurich

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

CERTIFICATE OF SERVICE
Page 1